| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO<br>1437 Bannock Street<br>Denver, Colorado 80202<br><br>ELITE CUSTOM BUILDERS LLC d/b/a ELITE ROOFING, a Colorado limited liability company,<br><br>  Plaintiff,<br><br>v.<br><br>THE TRAVELERS HOME AND MARINE INSURANCE COMPANY, a Connecticut corporation,<br><br>  Defendant. | DATE FILED: December 19, 2017 4:25 PM<br>FILING ID: D48B964F1FF1A<br>CASE NUMBER: 2017CV34714<br><br><br><br>^COURT USE ONLY^ |
| *Attorneys for Plaintiff*<br>David J. Furtado, No. 28002<br>Rodney J. Monheit, No. 48919<br>FURTADO LAW PC<br>3773 Cherry Creek North Drive, Suite 575<br>Denver, Colorado 80209<br>Telephone: (303) 755-2929<br>Facsimile: (303) 309-6463<br>E-Mail: dfurtado@furtadolaw.com<br>   rodney@furtadolaw.com | Case No:<br><br>Division: |
| **COMPLAINT AND JURY DEMAND** ||

Elite Custom Builders LLC d/b/a Elite Roofing ("Elite"), by and through its attorneys, FURTADO LAW PC, allege and aver as follows for its Complaint and Jury Demand:

## I. PARTIES AND JURISDICTION

1. Elite is a Colorado limited liability company with its principal place of business in Denver, Colorado.

**Exhibit A**

2

2. The Travelers Home and Marine Insurance Company ("Travelers") is a Connecticut corporation.

3. Travelers is licensed to conduct the business of insurance in Colorado, and at all relevant times hereto was conducting the business of insurance in Colorado.

4. Travelers issued a property insurance policy, Policy Number 0CHV26992362418633 1 (the "Policy") to Elizabeth Alexander for her residential property located at 1377 S. Washington Street, Denver, Colorado 80210 (the "Property").

5. The Policy was entered into in Colorado, and the torts committed by Travelers described in this Complaint and Jury Demand, occurred in Colorado.

6. This Court has personal jurisdiction over Travelers under C.R.S. § 13-1-124(1)(a), (b), or (d).

7. This Court has subject matter jurisdiction over all claims asserted herein.

8. Venue is proper in this district under C.R.C.P. 98(c), which Plaintiff designates as the place of trial.

## II. GENERAL ALLEGATIONS

9. Travelers issued a property insurance policy (Policy Number 0CHV26992362418633 1) to Ms. Alexander.

10. The Policy provides insurance coverage for the Property on a replacement cost value basis.

11. On June 30, 2015, during the Policy's effective period, a hailstorm caused damage to the roof of the house and the roof of the detached garage.

**Exhibit A**

12. At the time of the loss, the City and County of Denver had adopted and implemented the 2009 Editions of the International Residential Code and International Building Code.

13. Ms. Alexander timely reported the loss to Travelers, which Travelers then designated as Claim Number HWP8230001H.

14. On or about May 29, 2017, Travelers inspected the loss to the Property.

15. Travelers uses a software called Xactimate, produced by Xactware Solutions, Inc., to generate its repair estimates.

16. On or about July 31, 2015, Ms. Alexander contracted with Elite for the repairs to the damaged roofs of the Property.

17. Elite is a licensed general contractor and acted as such in organizing the repairs to the Property. Elite pulled the required permits and hired the labor crew to perform the repairs.

18. The repair contract between Ms. Alexander and Elite provides that payment for the roof repairs will be made to Elite from the insurance proceeds, and that Ms. Alexander was only responsible for paying her deductible.

19. The repair contract further authorized Elite to discuss the scope of the repairs directly with Travelers, at no additional cost to Ms. Alexander, and permitted Elite to file for any and all applicable claim supplements.

20. Ms. Alexander signed a letter authorizing Elite and its representatives to speak with Travelers to reach a fair and equitable settlement amount for the repairs to the Property. Ms. Alexander also requested that Travelers release the funds for general overhead and profit.

**Exhibit A**

21.     On September 11, 2015, a representative of Elite submitted to Travelers a supplemental payment request for the claim, which included, among other things, a charge for sheathing (supported by photographs and relevant codes) and general contractor overhead and profit (supported by Xactware White Paper on general contractor overhead and profit).

22.     On or about September 25, 2015, Travelers generated a repair estimate for the claim which included line items for sheathing for both the roof of the house and the roof of the garage.

23.     The three items described in paragraph 22 above were written with strikethroughs, and accompanied by a note stating: "This item did not previously exist or expands the scope of repairs, but is required by current building codes. The code upgrade cost is payable when incurred, subject to limits."

24.     On or about October 3, 2017, Travelers generated a claim estimate for the claim that did not include the sheathing line items contained in its September 25, 2015 estimate.

25.     Due to the concern that the roof structure of Ms. Alexander's house which support the roof were not sturdy enough to support the design loads, Elite retained Brandon Jeffrey, an engineer, to give his professional opinion on the roof.

26.     When replacing a roof assembly, typically all of the roofing materials are "loaded" onto the roof, allowing the roofers to repair the roof without having to make multiple trips on and off the roof to get more supplies. If the roof structure is not strong enough to support the roof load, then the roofers will have to manually load the roofing materials in an incremental basis, taking much more time to complete the repairs.

**Exhibit A**

27. Section 907.2 of the International Residential Code states: "The structural roof components shall be capable of supporting the roof covering system and the material and equipment loads that will be encountered during the installation of the roof covering system."

28. On November 18, 2015, Mr. Jeffrey sent Elite his opinion that the roof structure could not support the design loads for performing the roof repairs. That in fact, the existing roof is "almost 2 times overstressed" and that the roof structure needed additional support to meet current code loads.

29. On or about December 2, 2015, Travelers received Mr. Jeffrey's opinion letter and requested that the code documents supporting his position be submitted as well.

30. On or about December 3, 2015, Travelers notified Elite that it hired Rimkus Consulting Group to provide an opinion on the situation.

31. On December 24, 2015, Travelers sent an e-mail to Elite stating that it was unable to confirm whether a code provision required the additional work to the roof's structural supports and that the insurer would wait until Rimkus issued their report before finalizing review of the request.

32. On or about January 4, 2016, a representative from Elite e-mailed the Paul Schaffer, Chief Construction Inspector in the Denver Development Services Department for the City and County of Denver, asking whether the City of Denver enforces International Residential Code Section 907.2, requiring that a roof structure adequately support the design loads.

33. On January 4, 2016, a representative from Elite sent an email to Travelers explaining that the pertinent building code is International Residential Code Section 907.2, and

**Exhibit A**

that in order to get a response from the Denver building department, she must cite that specific code.

34. On January 5, 2016, Travelers notified Elite that it had shared the information supplied by Elite in its previous emails with their engineer at Rimkus.

35. On or about January 8, 2016, Rimkus completed its report. Presumably from conversations with the Denver Development Services, Rimkus stated that "permitted work for roof recovering generally does not include a requirement that the roof structure be evaluated for code conformance." But that, "it is reasonable to assume, that because the roof structure had been in place and was undamaged since 1925, the new roofing materials would not cause catastrophic failure of the roof structure if installed in accordance with normal construction methods." Travelers thus concluded that fixing the structural supports of the roof were unnecessary.

36. However, Rimkus's report also stated "The rafters were found to be inadequate to withstand required loading conditions under the current building code requirements. Therefore, structural upgrades may be required to improve a deficient condition of the roof structure which existed prior to the storm event which triggered the replacement of the roofing material."

37. On January 29, 2016, Elite emailed Travelers requesting a response as to whether the roof's structural supports is warranted and covered under the Policy.

38. On January 30, 2016, Travelers responded to Elite's January 29 e-mail, stating that Rimkus did not believe that it was necessary to do the structural upgrades to comply with code.

39. On February 1, 2016, Mr. Schaffer responded to Elite's January 4, 2016 e-mail, stating that the "Fix [to the structural supports] must be done to enable the roof to support the roof

**Exhibit A**

assembly and a Class C contractor licensed in Denver must pull a permit for the structural work with the engineer's report submitted."

40. On February 5, 2016, Travelers sent an e-mail to Elite, instructing Elite to apply for a permit and "if the permit office says in writing that you have to do this additional work due to code requirements we can consider it for payment."

41. In July 2016, Travelers informed Elite that the claim was sent to its local office, and that further investigation was in process regarding whether or not there is a requirement for the repairs to the structural supports of the roof.

42. On July 25, 2016, Elite's representative e-mailed Travelers' new claim adjuster from the local office, asking for a status of the claim. At this point, nearly one year after the date of loss, Travelers did not give a response as to whether the roof structural support work was necessary to complete the repairs.

43. On July 25, 2016, Travelers' representative responded to Elite's July 25, 2016 e-mail, stating that Travelers requested that the engineer go back out to look at the property "to see what is going on with your estimate regarding the structural code items you have brought up."

44. On August 3, 2016, Elite's representative e-mailed Travelers asking for a status on whether the engineer had concluded anything with regards to the structural repair work.

45. On August 4, 2016, Travelers representative responded to Elite's August 3, 2016 e-mail stating that Travelers had not yet heard back from the engineer.

46. On October 3, 2017, Travelers denied Elite's supplemental payment request for additional labor hours, stating that it already accounted for additional labor hours in its September 2016 estimate.

**Exhibit A**

47. On October 3, 2017, Elite Responded to Travelers' October 3, 2017 e-mail asking for an explanation as to how it already accounted for additional labor hours in its September 2016 estimate. The e-mail further explained that the additional hours could not have been accounted for in September 2016 because the reason for the extra hours was part of a compromise to load the roofing materials bit by bit so as to not overload the already stressed roof.

48. On November 6, 2017, Elite again e-mailed Travelers and further requested that the insurer include payment for the sheathing that was required to install the new roof covering.

49. On November 6, 2017, Travelers stated that it already denied the request for the roof sheathing in its October 3, 2017 e-mail.

50. On November 15, 2017, Elite e-mailed Travelers stating that Elite has not received any response regarding the sheathing supplement.

51. Sheathing was installed on both the house roof and the garage roof, but Travelers has refused to authorize payment for the costs to install (labor and materials) for those repairs, and also failed to remit payment for the additional labor hours required to manually load the roofing materials onto the stressed roof.

### III. FIRST CLAIM FOR RELIEF
(Breach of Contract)

52. Elite re-alleges each and every allegation of this Complaint and Jury Demand as if fully set forth herein.

53. The Policy is a valid, binding and enforceable insurance contract between Ms. Alexander and Travelers.

**Exhibit A**

54. Ms. Alexander signed a valid repair contract with Elite wherein Ms. Alexander assigned to Elite his right to the insurance proceeds to be paid by Travelers for the repairs to the Property's roofs.

55. Ms. Alexander intended to assign to Elite her right to the future insurance benefits pertaining to the damaged roofs of the Property stemming from the claimed hail loss.

56. Under the Policy, Travelers is obligated to pay for the replacement cost of the hail-damaged parts of the Property.

57. The roof of Ms. Alexander's house is a part of the Property that was damaged by hail.

58. The replacement cost of the roof includes both the cost of materials and labor.

59. The repairs to the structural supports of the roof were a covered benefit under the Policy, which Travelers denied to authorize payment for, forcing Elite to expend more labor hours to install the roof due to concerns about loading the roofing materials.

60. Travelers' denial of payment for the additional labor hours incurred constitute a breach of the insurance contract.

61. Travelers' denial of payment for the additional labor hours fails to satisfy the reasonable expectations of coverage under the Policy.

62. General contractor overhead and profit is a covered benefit under the Policy.

63. Elite is a general contractor entitled to the customary general contractor overhead and profit.

64. Travelers did not authorize payment for general contractor overhead and profit.

**Exhibit A**

65. The sheathing component of the roof of the garage and the roof of the house is a covered benefit under the Policy.

66. Travelers failed to remit payment for the replacement cost value of the sheathing components of the roofs.

### IV.   SECOND CLAIM FOR RELIEF
(Unjust Enrichment)

67. Elite re-alleges each and every allegation of this Complaint and Jury Demand as if fully set forth herein.

68. When Elite repaired Ms. Alexander's roofs, Elite conferred a benefit which was known to and/or appreciated by Travelers. That benefit was the full replacement cost value of Ms. Alexander's roofs, including general contractor overhead and profit, and the added labor charges identified in this Complaint.

69. In addition to the replacement cost value dollar amount, Travelers has received the goodwill of having its insured be made whole, without having fulfilled its contractual obligations with its insured.

70. Travelers retained payment for the sheathing for the roofs, the customary general contractor overhead and profit and the added labor costs that Elite incurred.

71. Travelers' retention of the payment for general contractor overhead and profit and added labor costs is unjust because they are covered benefits that are due and owing under the Policy. Travelers owes these contractual benefits and Elite is entitled to those proceeds.

### V.   THIRD CLAIM FOR RELIEF
(Violation of C.R.S. § 10-3-1115 & Relief Under C.R.S. § 10-3-1116)

**Exhibit A**

72. Elite re-alleges each and every allegation of this Complaint and Jury Demand as if fully set forth herein.

73. Section 10-3-1115, C.R.S., forbid insurers such as Travelers from unreasonably denying or delaying payment of a claim for benefits owed to or on behalf of a first-party claimant.

74. An insurer's delay or denial is unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.

75. Elite is a "first-party claimant" as that term is used under C.R.S. § 10-3-1115(1)(A)(I) and as is interpreted by the courts of the State of Colorado.

76. Elite is entitled to assert this claim for benefits on behalf of Ms. Alexander.

77. Travelers is an entity engaged in the business of insurance.

78. Travelers denied authorizing payment for the structural roof supports without a reasonable basis. Travelers was provided with all of the necessary information – from Elite's retained engineer, from its own engineer, and had access to the Policy and International Residential Code 907.2 – all of which pointed to the fact that the structural support work was covered under the Policy's ordinance and law coverage. Travelers accordingly should have authorized payment for work to the roof's structural supports, but instead delayed the process to such an extent that the insured, and Elite, decided to forego that covered benefit and install the roof assembly in a more tedious and laborious fashion.

79. Ms. Alexander and Elite could not afford to do the structural support work without the insurance benefits that should have been paid by Travelers. By virtue of the fact that Travelers denied authorizing payment for the work, Elite was left with no choice but to manually load the roofing materials, for fear of overstressing the already overstressed roof.

**Exhibit A**

80. Travelers' lacks any reasonable basis for its failed claim investigation and adjustment.

81. Travelers put Elite and its insured in a precarious situation, whereby the roof replacement had to be performed on a roof that was not compliant with applicable codes.

82. Travelers denied authorizing payment for the sheathing for the roofs without any reasonable basis. It initially decided it was covered under the Policy, but later took it out for no good reason.

83. The International Residential Code requires that roof coverings be installed onto solidly sheathed decks. The roof deck of Ms. Alexander's house and garage were not solidly sheathed, thus necessitating the sheathing installation.

84. Travelers denied payment for the customary general contractor overhead and profit without a reasonable basis. In fact, Travelers provided no basis at all in the Policy, the facts and circumstances, nor in applicable Colorado law for its denial of the general contractor overhead and profit.

85. Travelers' investigation of the claim was unreasonable as Travelers was provided with all information necessary to properly evaluate the claim, find coverage for the added roof support, account for increased labor costs, and issue payment, but refused to do so.

86. Travelers knew or should have known that the covered benefits sought in this Complaint would be incurred by any contractor hired to perform the repair work and are covered under the Policy.

87. Travelers denied payment of first-party benefits and did so without a reasonable basis within the meaning of C.R.S. § 10-3-1115.

**Exhibit A**

88. As described in this Complaint and Jury Demand, Travelers unreasonably delayed the adjustment of this claim for over one year when a reasonable insurance company under these circumstances would have promptly adjusted the claim and issued payment for all covered benefits in a timely manner.

89. Elite therefore brings this claim to recover damages awardable under C.R.S. § 10-3-1116, separate from and in addition to those remedies and damages available under any other claim for relief.

**WHEREFORE** Elite Custom Builders LLC d/b/a Elite Roofing requests that the Court enter judgment in its favor and against Travelers and award damages as follows:

1. For the replacement cost value of the covered benefits due and owing under the Policy, including the sheathing, general contractor overhead and profit, and additional labor costs for the manual loading of the roofing materials; and

2. For two times the amount of all covered benefits that were unreasonably delayed/denied, including but not limited to the structural supports to the roof, as permitted by C.R.S. § 10-3-1116(1); and

3. For reasonable attorneys' fees, costs, and expenses incurred by this lawsuit, as permitted under C.R.S. § 10-3-1116(1); and

4. For such other and further relief as the law permits and this Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

Dated this 19th day of December 2017          Respectfully submitted,
                                              FURTADO LAW PC
                                              *s/ Rodney J. Monheit*

**Exhibit A**

                David J. Furtado
                Rodney J. Monheit
                *Attorneys for Plaintiff*

Plaintiff's Address:
5475 Peoria St. Unit 4-106
Denver, Colorado 80239

**Exhibit A**